NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BAKIRAH WAHEED, | : | **Hon. Dennis M. Cavanaugh** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : | Civil Action No. 09-CV-0467 (DMC) |
|  | : |  |
| ASIA ATKINS, | : |  |
|  | : |  |
| Defendant. | : |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon motion by Defendant Asia Atkins to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for an entry of summary judgment against pro se Plaintiff pursuant to Fed. R. Civ. P. 56(c). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, it is the decision of this Court for the reasons herein expressed, Defendant's motion to dismiss is **granted** and Defendant's motion for summary judgment is **denied**.

## I.    BACKGROUND

###     *A.    Complaint*

      By way of complaint, Bakirah Waheed ("Plaintiff"), inmate #591456 in New Jersey State Prison ("NJSP") in Trenton, New Jersey, alleges that Asia Atkins ("Defendant"), an NJSP Senior Corrections Officer ("SCO"), maliciously attacked Plaintiff with the cell door causing harm to Plaintiff. Plaintiff asserts that Defendant controlled the switchboard enabling the door to cell #4 to open or close. At approximately 2:15 p.m., on January 17, 2009, Plaintiff alleges that Defendant

intentionally closed the cell door on Plaintiff, interposing Plaintiff between the door and the cell. Additionally, Plaintiff also contends Defendant verbally harassed and attacked Plaintiff. Finally, Plaintiff alleges that on January 22, 2009, Defendant admitted to causing Plaintiff bodily harm and threatened Plaintiff's life.

B.     *Internal Investigation*

Initially, Plaintiff filed an inmate remedy form on January 17, 2009 that was forwarded to the Special Investigation Division on March 19, 2009. On April 8, 2009, Senior Investigator, Valisa Leonard conducted an interview of Plaintiff in the presence of Investigator Shawn Harrison. In that interview, Plaintiff indicated that in approaching the cell door, it began to open, but upon entering the door passageway, the door began to close. Plaintiff was stuck between the door and the door jamb. Plaintiff yelled up to the control booth as she was being "crushed." At the time, Plaintiff did not notify a custody supervisor or floor officer of the incident. Plaintiff indicated that the previous week a verbal altercation arose between Plaintiff and Defendant concerning Plaintiff's time on the telephone. Further, Plaintiff indicated that she believed Defendant was talking about her to other officers. An assessment made by medical staff the day of the incident documented the following, "Rt forearm had small amount of redness approx. 3 in by 3 in, w approx. 2 in red streak with broken skin but no active bleeding. Good rt. radial pulses, skin warm and dry, good ROM rt arm. Area cleansed with NSS, antibiotic ointment and telfa dressing applied." [sic]

Senior Investigator Leonard also interviewed SCO Monique Baylor, on duty at the time of the incident, concerning the allegations. SCO Baylor indicated that she heard Defendant tell Plaintiff to lock in. SCO Baylor then recalls Plaintiff yell out "open up her cell door" [sic]. SCO Baylor then heard the door open and close again. SCO Baylor contends that she never heard Plaintiff

2

scream out.  At approximately 7:00 p.m. that day, SCO Baylor contends that Plaintiff told Sergeant Salmon she required medical attention.

By way of interview, Defendant indicated that on the day of the incident, Defendant opened Plaintiff's cell door.  Plaintiff entered the door, then stepped out and said, "wait before you close my f***ing door."  Defendant contends that she opened the cell door again and closed it.  Further, according to Defendant, at no time was Plaintiff closed up in the door.  Defendant also asserts that Plaintiff never reported the injury to Defendant or a floor officer.  Additionally, earlier that day, Plaintiff had been issued a citation for abusive language that was presented to Plaintiff by Sergeant Salmon later that evening.

Investigator Leonard concluded that Plaintiff's complaint was without merit because the charge of her injury did not arise until after the sanction was issued and further, because Plaintiff was in a position to avoid the slow moving door by stepping into the cell, rather than disobeying a lock in and stepping out into the hall.  Notably, identified as a last resort, Plaintiff wrote a letter to Commissioner George W. Hayman ("Commissioner Hayman"), dated March 3, 2009, because Plaintiff's complaint had not been addressed.  Thereafter, the preceding investigation was instituted.

## II.  LEGAL STANDARD

### A.    Motion to Dismiss

"The [d]istrict [c]ourt, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [is] required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  "While a complaint attacked  by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above a speculative level, [ ] on the assumption that all factual allegations in the complaint are true (even if doubtful in fact)." Bell at 555-56.

   B.    Summary Judgment

   "A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009). However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

   "A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c)." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

"A movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion." Johnson v. City of Asbury Park, 2009 U.S. Dist. LEXIS 115518, *5 (D.N.J. Dec. 11, 2009) (citing Anchorage Assoc. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)). "Instead, Rule 56 provides that the Court may grant the unopposed motion 'if appropriate.'" Id. "An unopposed motion is appropriately granted if the Court, following an analysis on the merits, determines that the movant is entitled to judgment as a matter of law." Id.

5

## III.   **DISCUSSION**

I.     Motion to Dismiss Claims

     *A.     Eleventh Amendment Claims*

Defendant moves to dismiss Plaintiff's claims arising pursuant to conduct occurring within the scope of Defendant's official capacity as barred by immunity under the Eleventh Amendment to the United States Constitution.   Therefore, Defendant asserts that Plaintiff's claims under the Eleventh Amendment must be dismissed. A claim pursuant to 42 U.S.C. § 1983 seeks a remedy for deprivation of a person's "rights, privileges or immunities secured by the Constitution or laws of the United States." Capogrosso v. Supreme Court of N.J., 588 F.3d 180, *9 (D.N.J. 2009). "The Eleventh Amendment to the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court." Id. at 8; see MCI Telecom Corp. v. Bell Atl. Pennsylvania, 271 F.3d 491, 503 (3d Cir. 2001).   "The Eleventh Amendment bars a suit for money damages against a state agency and state officials sued in their official capacities."  Gattis v. Phelps, 2009 U.S. App. LEXIS 20402, *2 (3d Cir. Sep. 14, 2009).  "This immunity does not extend to individual state officers sued in their individual capacities for prospective injunctive or declaratory relief to remedy ongoing violations of federal law."  Capogrosso, 588 F.3d at *8.  To the extent that the relief sought is an award of damages, the Plaintiff's Eleventh Amendment claims against Defendant in her official capacity are **dismissed with prejudice**.

     *B.     42 U.S.C. § 1983 Claims*

Defendant argues that Defendant does not constitute a "person" for purposes of 42 U.S.C. § 1983 while operating in an official capacity and as a consequence, is not amenable to suit under that

provision. Pursuant to 42 U.S.C. § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

"Obviously, state officials literally are persons."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  "But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Id. (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).  "As such, it is no different from a suit against the State itself." Id.; see Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Therefore, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the State." Id. at n.10 (citing Kentucky, 473 U.S. at 167). To the extent that Defendant is being sued in an official capacity and the relief sought is not injunctive, Defendant does not qualify as a person for purposes of 42 U.S.C. § 1983.  Therefore, on that ground Plaintiff's 42 U.S.C. § 1983 claims against Defendant in her official capacity are **dismissed with prejudice**.

II.     Summary Judgment Claims

    A.     *Eighth Amendment Claims*

    To the extent that the complaint may be read as a claim for excessive force under the Eighth Amendment to the United States Constitution, Defendant contends that such allegations should be summarily dismissed as meritless and devoid of factual support. Accordingly, Defendant requests that this Court grant summary judgment in Defendant's favor.

    "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is [ ] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). "[C]ourts considering a prisoner's claim must ask both if 'the officials acted with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. at 8.  Notably,

> in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).   "[T]he absence of significant resulting injury is

not a per se reason for dismissing a claim based on alleged wanton and unnecessary use of force against a prisoner." Id. at 108. "Although the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used (the blows)." Id. "The constitutional touchstone is whether punishment is cruel and unusual." Id. "Summary judgment in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Id. at 106.

Accepting Defendant's statement of undisputed material facts as admitted, in accordance with Local Rule 56.1, when Plaintiff returned from the yard, Defendant opened the door and Plaintiff entered the cell. Further, Plaintiff then walked out of the door and yelled, "wait before you close the f***ing door" as the cell door continued to close. Additionally, Defendant then opened the door again so Plaintiff could enter the cell. Lastly, Defendant did not see Plaintiff get pinned in the cell door and Defendant was not told, at the time of the incident, by Plaintiff that was Plaintiff was injured.

Nonetheless, although Plaintiff does not file an opposition to this motion, Plaintiff supports her contention with the submission of at least three written statements from other inmates concerning their observations. One inmate indicates having observed Plaintiff's body caught in the cell door. Another indicates that, following the incident, Defendant in reference to the incident conceded, "That's right I did it and I shouldve did it to you." [sic]. Further, objective medical evidence supports Plaintiff's contention that she indeed suffered an injury on the day in question. Therefore, a genuine issue of fact arises concerning whether Plaintiff's injury resulted from being pinned by the cell door and if so, whether that pinning was the product of malicious or sadistic intent or inadvertence. Therefore,

summary judgment is **denied**.[1]

B.        *New Jersey State Law Tort Claims*

Finally, Defendant argues that to the extent Plaintiff's claims may be construed as New Jersey State Law Tort Claims, Plaintiff failed to comply with N.J.S.A. § 59:8-8 by filing a notice of tort claim.  Therefore, Defendant asserts that summary judgment should be entered in Defendant's favor. Pursuant to N.J.S.A. § 59:8-3, titled Claims for Damages Against Public Entities, "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." Pursuant to N.J.S.A. § 59:8-7, directing the place for presentation of a claim, "[a] claim for damage or injury arising under this act against the State shall be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission. A claim for injury or damages arising under this act against a local public entity shall be filed with that entity." Pursuant to N.J.S.A. § 59:8-8, directing the time for presentation of a claim, "[a] claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action." "The claimant bears the burden of proving that the claim was filed with the appropriate public entity."  Rolax v. Whitman, 175 F. Supp. 2d 720, 730 (D.N.J. 2001).

The Department of Corrections, Special Investigation Division, initiated an investigation in this matter pursuant to a referral by Commissioner Hayman. Included in that referral and direction to investigate is a copy of Plaintiff's letter, dated March 3, 2009, less than ninety days after the cause of

---

[1]See Fed. R. Civ. P. 56(d).

action accrued.  It is not clear that Plaintiff has failed to comply with the requirements of N.J.S.A. given that Plaintiff submitted notice to the State of New Jersey, Department of Corrections by way of letter to Commissioner Herman.  Therefore, at this time, Defendant's motion for summary judgment as to Plaintiff's New Jersey State Law Tort Claims is **denied.**

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **granted** and Defendant's motion for summary judgment is **denied**.  An appropriate order accompanies this opinion.

                                                     S/ Dennis M. Cavanaugh
                                                    Dennis M. Cavanaugh, U.S.D.J.

Dated:          January  13 ,  2010
Original:        Clerk
cc:               All Counsel of Record
                   Hon. Mark Falk, U.S.M.J.
                   File

.